**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION**

| | |
|---|---|
| **MARTHA "KEISHA" LACY, LORRAINE BENNETT-FREEMAN, SHEENA BIBBS, AND NAKEDRA FREEMAN, Individually and On Behalf of All Others Similarly Situated,** | Case No. ___3:22-cv-98-KHJ-MTP___ |
| **Plaintiffs,** | **CLASS ACTION COMPLAINT** |
| **vs.** | **JURY TRIAL DEMANDED** |
| **FAMILY DOLLAR, INC., A North Carolina Corporation,** | |
| **Defendant.** | |

## CLASS ACTION COMPLAINT

Plaintiffs Martha "Keisha" Lacy, Lorraine Bennett-Freeman, Sheena Bibbs, and Nakedra Freeman (together "Plaintiffs"), individually and on behalf of all others similarly situated, by and through their undersigned attorneys, bring this Class Action Complaint against Defendant Family Dollar, Inc. ("Family Dollar"), for its negligent, reckless, and/or intentional practice of selling products that may be contaminated by virtue of a rodent infestation and other unsanitary conditions in stores throughout Mississippi, Arkansas, Louisiana, Alabama, Missouri and Tennessee (together, the "States").  Plaintiffs seek both injunctive and monetary relief on behalf of the proposed Classes (as defined herein), including requiring full and accurate disclosure of the rodent infestation and other unsanitary conditions and restoring monies to the members of the proposed Classes.  Plaintiffs allege the following based upon personal knowledge, investigation by counsel, and facts that are a matter of public record and, as to all other matters, upon information and belief.

## I.    INTRODUCTION

1.    Family Dollar is a value store chain that aspires to be "[t]he best small-format value and convenience retailer, serving the needs of [its] shoppers in the neighborhoods [it] serves."[1]

2.    Family Dollar sells groceries and household goods at discounted prices in stores throughout the United States including over-the-counter medications, medical devices, dietary supplements, cosmetics, human food, and pet food (the "Products").

3.    On or about February 18, 2022, Family Dollar temporarily closed 404 of its stores in Mississippi, Arkansas, Louisiana, Alabama, Missouri and Tennessee after the U.S. Food and Drug Administration (FDA) announced that it had found unsanitary conditions, including a rodent infestation, inside Family Dollar Distribution Center 202 in West Memphis, Arkansas (the "Rodent

---

[1] https://www.familydollar.com/about-us (last visited 2/22/2022)

Infestation").[2]

4.      The Rodent Infestation—that was never disclosed to Family Dollar consumers prior to the FDA and Family Dollar's announcements—poses a health and safety hazard to consumers.

5.      There are numerous dangers associated with rodents including the potential presence of Salmonella, an organism which can cause serious and sometimes fatal infections in infants, young children, frail or elderly people, pregnant persons, persons with pre-existent pathology (e.g., patients with cancer undergoing chemotherapy treatments, organ transplant recipient, etc.) and others with weakened immune systems.

6.      Family Dollar has had actual knowledge of the Rodent Infestation since at least March 29, 2021.  Family Dollar knew or should have known of the Rodent Infestation from far earlier due to its obligation to inspect its facilities, including distribution centers, for safety and health-related issues. Nevertheless, Defendant chose to omit information about the Rodent Infestation and not to disclose Rodent Infestation to Plaintiffs and the Classes, so that it could continue to profit from the sale of the Products.

7.      According to the New York Times:

A recent Food and Drug Administration inspection of the facility, in West Memphis, Ark., found live and dead rodents "in various states of decay," rodent droppings, evidence of gnawing and nesting, and products stored in conditions that did not protect against these unsanitary conditions, the agency said in a statement on Friday.

A fumigation of the facility last month revealed more than 1,100 dead rodents, **and a review of company records indicated the collection of more than 2,300 rodents from late March to September, "demonstrating a history of infestation**," the agency said.[3]

8.      It was only on February 18, 2022, that Family Dollar announced it would initiate a

---

[2] https://www.businesswire.com/news/home/20220218005563/en/Family-Dollar-Stores-Issues-Voluntary-Recall-of-Certain-FDA-Regulated-Products-in-Six-States-Including-Drugs-Devices-Cosmetics-Foods (last visited 2/22/2022)
[3] https://www.nytimes.com/2022/02/19/us/fda-family-dollar-recall.html (last visited 2/22/2022) (emphasis added)

voluntary retail level product recall of some FDA-regulated products that were affected by the Rodent Infestation.

9.      Despite its knowledge, Defendant omitted information regarding the Rodent Infestation from all advertising, promotion, or other contacts with Plaintiffs and members of the Classes prior to their purchase of the Products and continued to ship the products to its stores from the warehouse. By knowingly failing to disclose the Rodent Infestation and associated risk of contamination to consumers and by failing to correct the problem, Plaintiffs and the Classes purchased Products of a lesser standard, grade and quality represented that do not meet ordinary and reasonable consumer expectations regarding the quality or value of the Products and are unfit for their intended purpose. Moreover, the contamination associated with the Rodent Infestation poses a health risk to consumers that used or handled the Products.

10.      Plaintiffs bring this action on behalf of themselves and all those similarly situated (the "Classes," "Class Members,") for Defendant's deceptive trade practices in violation of the consumer protection laws of the States.  Plaintiffs seek damages, attorney fees and costs, punitive damages, and the replacement of, or refund of money paid to purchase the Products, and any other legal relief available for their claims. Should Plaintiffs' demanded legal relief be unavailable or prove insufficient, Plaintiffs seeks appropriate equitable and injunctive relief in the alternative pursuant to Fed. R. Civ. P. 8(a)(3).

## II.  **PARTIES**

11.      Plaintiff Martha "Keisha" Lacy is, and at all times relevant hereto has been, a citizen of Durant, Mississippi, located in the County of Holmes.  Plaintiff Lacy purchased various dry items on or about February 16, 2022, from a Family Dollar located in Durant, Mississippi.

12.      Plaintiff Lorraine Bennett-Freeman is, and at all times relevant hereto has been, a

citizen of Pearl, Mississippi, located in the County of Rankin. Plaintiff Bennett-Freeman purchased supplements on or about December 2021 and January and February 2022 from a Family Dollar located in Pearl, Mississippi.

13.    Plaintiff Sheena Bibbs is, and at all times relevant hereto has been, a citizen of Byram, Mississippi, located in the County of Hinds. Plaintiff Bibbs purchased dietary products, food, baby medicine, soap, and hair products on or about January and February 2022 from a Family Dollar located in Jackson, Mississippi.

14.    Plaintiff Nakedra Freeman is, and at all times relevant hereto has been, a citizen of Jackson, Mississippi, located in the County of Hinds. Plaintiff Freeman purchased various items on September 3, 2021, October 2, 2021, October 6, 2021, and June 29, 2021, from a Family Dollar located in Jackson, Mississippi.

15.    During the time Plaintiffs purchased and used the Products, and due to the false and misleading claims and omissions by Defendant, Plaintiffs believed the products they purchased were safe. Plaintiffs were unaware the Products contained, or had a risk of containing, Salmonella or other infectious diseases. Plaintiffs would not have purchased the Products if the Rodent Infestation and the related potential for contamination with Salmonella or other infectious disease had been fully and accurately disclosed and represented.

16.    Defendant Family Dollar is incorporated under the laws of the state of North Carolina with its principal place of business located at 500 Volve Pkwy, Chesapeake, Virginia. Family Dollar is a brand under its parent company, Dollar Tree, Inc, a Virginia corporation with its principal place of business at the same location as Family Dollar. Defendant is responsible for the manufacturing, marketing, distribution, sale, and labeling of the Products to millions of consumers throughout the States, including in this District. Defendant created, allowed,

negligently oversaw, and/or authorized the unlawful, fraudulent, unfair, misleading, and/or deceptive labeling and advertising for the Products.

17.    The marketing and advertising relied on by Plaintiffs was disseminated throughout the States, including this District, by Defendant and its agents through advertising, packaging, and labeling that contained the omissions alleged herein.  The marketing and advertising were designed to encourage consumers, and reasonably misled consumers, into purchasing the Products throughout the States, including this District.

## III.    JURISDICTION AND VENUE

18.    This Court has original jurisdiction over all causes of action asserted herein under the Class Action Fairness Act of 2005 ("CAFA"), 28 U.S.C. §1332(d) for the following reasons: (a) some of the class members are citizens of a state that is different from the citizenship of the Defendant; (b) the putative class size is greater than 100 persons; (c) the amount in controversy in the aggregate for the putative class exceeds the sum of $5 million, exclusive of interest and costs; and (d) the primary defendants do not include States, State officials, and/or other governmental entities against whom the district court may be foreclosed from ordering relief.

19.    This Court has original jurisdiction over this action under CAFA, 28 U.S.C. §1332(d), because, upon information and belief, no other class action has been filed asserting the same or similar factual allegations against the defendants on behalf of the same or other persons during the 3-year period preceding the filing of this class action.

**General Personal Jurisdiction**

20.    This Court has personal jurisdiction over Plaintiffs, who are residents of the State of Mississippi.

21.     This Court has both general and specific personal jurisdiction over the Defendant, Family Dollar.

22.     This Court has general personal jurisdiction over Defendant Family Dollar because Defendant operates in Mississippi and because Defendant advertises, markets, and sells the Products in Mississippi, accepts money from purchasers located in Mississippi, has engaged in systematic and continuous business activities in Mississippi, transacted substantial business with Mississippi entities and residents, and generally has sufficient minimum contacts in Mississippi to satisfy the Mississippi Long Arm Statute, Miss. Code Ann. § 13-3-57.

**Specific Personal Jurisdiction**

23.     This Court has specific personal jurisdiction over Defendant arising from Defendant's advertising, marketing, and sale of the Products in Mississippi, which at all relevant times, included or risked including dangerous substances, all of which have caused harm in Mississippi as a result of the specific business activities complained of herein, either directly or through Defendant's agents.

24.     This Court has specific personal jurisdiction over Defendant because the advertising, marketing, and sale of the Products, which included or risked including dangerous substances, occurred in parts of Mississippi that are located in the Southern District of Mississippi.

25.     Venue is proper in the Southern District of Mississippi pursuant to 28 U.S.C. §1391(b)(2), because Plaintiffs reside in the Southern District of Mississippi and ingested and handled the Products at issue within the confines of this District.

26.     Venue is proper in the Southern District of Mississippi under 28 U.S.C. §1391(b)(1) & (2) and 28 USC §1391(d) because Defendant regularly conducts substantial business within the Southern District of Mississippi.

27.    Venue is also proper in the Southern District of Mississippi under 28 U.S.C. §1391(b)(2) because a substantial portion of the events or omissions giving rise to Plaintiffs' claims occurred in this District, namely Defendant's advertisement, sale, and marketing of the Products, which occurred in this District and caused financial harm to members of the putative class that reside in this District.

## IV.    FACTUAL BACKGROUND

28.    On February 18, 2022, the U.S. Food and Drug Administration issued the following press release:

> Today, the U.S. Food and Drug Administration is alerting the public that several categories of FDA-regulated products purchased from Jan. 1, 2021, through the present from Family Dollar stores in Alabama, Arkansas, Louisiana, Mississippi, Missouri and Tennessee may be unsafe for consumers to use. The impacted products originated from the company's distribution facility in West Memphis, Arkansas, where an FDA inspection found insanitary conditions, including a rodent infestation, that could cause many of the products to become contaminated. The FDA is working with the company to initiate a voluntary recall of the affected products.

> "Families rely on stores like Family Dollar for products such as food and medicine. They deserve products that are safe," said Associate Commissioner for Regulatory Affairs Judith McMeekin, Pharm.D. "No one should be subjected to products stored in the kind of unacceptable conditions that we found in this Family Dollar distribution facility. These conditions appear to be violations of federal law that could put families' health at risk. We will continue to work to protect consumers."

> This alert covers FDA-regulated products purchased from Family Dollar stores in those six states from Jan. 1, 2021, through the present. Some examples of these products include human foods (including dietary supplements (vitamin, herbal and mineral supplements)), cosmetics (skincare products, baby oils, lipsticks, shampoos, baby wipes), animal foods (kibble, pet treats, wild bird seed), medical devices (feminine hygiene products, surgical masks, contact lens cleaning solutions, bandages, nasal care products) and over-the-counter (OTC) medications (pain medications, eye drops, dental products, antacids, other medications for both adults and children).

Consumers are advised not to use and to contact the company regarding impacted products. The agency is also advising that all drugs, medical devices, cosmetics and dietary supplements, regardless of packaging, be discarded. Food in non-permeable packaging (such as undamaged glass or all-metal cans) may be suitable for use if thoroughly cleaned and sanitized. Consumers should wash their hands immediately after handling any products from the affected Family Dollar stores.

Consumers who recently purchased affected products should contact a health care professional immediately if they have health concerns after using or handling impacted products. Rodent contamination may cause Salmonella and infectious diseases, which may pose the greatest risk to infants, children, pregnant women, the elderly and immunocompromised people.

Following a consumer complaint, the FDA began an investigation of the Family Dollar distribution facility in West Memphis, Arkansas, in January 2022. Family Dollar ceased distribution of products within days of the FDA inspection team's arrival on-site and the inspection concluded on Feb. 11. Conditions observed during the inspection included live rodents, dead rodents in various states of decay, rodent feces and urine, evidence of gnawing, nesting and rodent odors throughout the facility, dead birds and bird droppings, and products stored in conditions that did not protect against contamination. More than 1,100 dead rodents were recovered from the facility following a fumigation at the facility in January 2022. Additionally, a review of the company's internal records also indicated the collection of more than 2,300 rodents between Mar. 29 and Sep. 17, 2021, demonstrating a history of infestation.[4]

29.     On the same day, Family Dollar issued a press release indicating it was initiating a voluntary retail level product recall of "certain products regulated by the [FDA] that were stored and shipped to 404 stores from Family Dollar Distribution Center 202 in West Memphis, Arkansas from January 1, 2021, through the present due to the presence of rodents and rodent activity at Family Dollar Distribution Center 202."[5]

---

[4] https://www.fda.gov/news-events/press-announcements/fda-alerts-public-potentially-contaminated-products-family-dollar-stores-six-states (last accessed 2/22/2022)
[5] https://www.businesswire.com/news/home/20220218005563/en/Family-Dollar-Stores-Issues-Voluntary-Recall-of-Certain-FDA-Regulated-Products-in-Six-States-Including-Drugs-Devices-Cosmetics-Foods (last visited 2/22/2022)

30.     Family Dollar acknowledges the health and safety concerns arising from the Rodent Infestation[6]:

> There are numerous hazards associated with rodents including the potential presence of *Salmonella*. Use or consumption of affected products may present risk of illness due to the potential presence of *Salmonella*, an organism which can cause serious and sometimes fatal infections in infants, young children, frail or elderly people, pregnant persons, persons with pre-existent pathology (e.g., patients with cancer undergoing chemotherapy treatments, organ transplant recipient, etc.) and others with weakened immune systems. Healthy persons infected with *Salmonella* often experience fever, diarrhea (which may be bloody), nausea, vomiting and abdominal pain. In rare circumstances, infection with *Salmonella* can result in the organism getting into the bloodstream and producing more severe illnesses such as arterial infections (*i.e.*, infected aneurysms), endocarditis and arthritis.

31.     Defendant's voluntary recall is limited in scope to certain FDA-regulated products[7]:

> Products covered by this retail level recall include all: (i) drugs; (ii) medical devices; (iii) cosmetics; (iv) dietary supplements; and (v) human and animal (pet) food products. The recall does not apply to products shipped directly to the stores by the distributor or manufacturer, such as all frozen and refrigerated items. The 404 stores to which this recall applies are listed on the attached schedule. The recall does not apply to other store locations.

## V.    FRAUDULENT OMISSION ALLEGATIONS

32.     Absent discovery, Plaintiffs are unaware of, and unable through reasonable investigation to obtain, the true names and identities of those individuals at Family Dollar responsible for disseminating unfair, deceptive, and misleading marketing materials regarding the Products.  Defendant is necessarily in possession of all this information. Plaintiffs' claims arise out of Defendant's fraudulent omission of the Rodent Infestation.

33.     Plaintiffs allege that at all relevant times, including specifically at the time they and Class Members purchased the Products, Defendant knew, should have known, or was reckless in not knowing of the Rodent Infestation; Defendant had a duty disclose information material to a

---

[6] *Id.*
[7] *Id.*

consumer, such as the Rodent Infestation, based upon its exclusive knowledge; but Defendant never disclosed the Rodent Infestation to Plaintiffs, Class Members, or the general public other than its halfhearted, inadequate recall of some Products.

34.    Plaintiffs make the following allegations as specific as reasonably possible:

a.    **Who:** *Family Dollar* actively omitted information concerning the existence of the Rodent Infestation from Plaintiffs and Class Members at the point of sale or thereafter.  Defendant's agents should have and could have disclosed the Rodent Infestation.  As to Plaintiffs themselves, Defendant should have and could have disclosed the Rodent Infestation at the time they purchased the Products or thereafter.

b.    **What:** Family Dollar knew, should have known, or was reckless in not knowing, that the Products were exposed to Salmonella and other infectious diseases due to the Rodent Infestation.  Despite its knowledge, Family Dollar *failed to disclose the Rodent Infestation* at the point of sale or thereafter.

c.    **When:** Family Dollar's omissions began *from the start of the Class period and continue to this day*. Family Dollar has never taken any action to inform Plaintiffs, Class Members, or the general public of the true nature of the Rodent Infestation. As to Plaintiffs themselves, Defendant has continually omitted the true nature of the Rodent Infestation for the entirety of the relevant time period, including at the point of sale.

d.    **Where:** Family Dollar's omissions occurred *in every commun*ication it had with Plaintiffs, Class Members, and the general public. As to Plaintiffs

themselves, Defendant's omissions occurred in every communication it had with Plaintiffs about the Products, including all communications that happened before, at the point of and after their purchases of the Products.

e.   **How:** Defendant *omitted and failed to disclose* the Rodent Infestation to Plaintiffs, Class Members, or the general public at the point of sale or thereafter via a press release, permanent warnings affixed to the Products, direct mail campaign, or otherwise. As to Plaintiffs themselves, Defendant omitted and failed to disclose the Rodent Infestation in any communication or point of sale document.

f.   **Why:** Due to corporate greed, Family Dollar omitted the Rodent Infestation to deceive Plaintiffs, Class Members, and the general public into buying Products to *maximize its profits*. Furthering its goal to maximize profits, Family Dollar failed to notify Class Members of the true nature of the Rodent Infestation to avoid an avalanche of requests to refund Product purchases. As to Plaintiffs themselves, Family Dollar omitted the Rodent Infestation to deceive them into purchasing the Products, thereby maximizing Defendant's profits and to avoid refunding the cost of the Products.

g.   **Causation:** Because Family Dollar failed to disclose the Rodent Infestation, despite its extensive knowledge, Plaintiffs and Class Members purchased Products that did not or will not safely perform and as such are worth less than one that does safely perform. Had Defendant disclosed the Rodent

Infestation, *Plaintiffs and other Class Members would not have purchased the Products, or certainly would have paid less for the Products*.

## VI.    TOLLING OF STATUTES OF LIMITATIONS

35.    Defendant was and remains under a continuing duty to disclose to Plaintiffs and members of the Classes the true character, quality, and nature of the Products, that the Products were exposed to contamination by virtue of the Rodent Infestation, and that the Rodent Infestation poses a health and safety concern to consumers and diminishes the value of the Products.

36.    As a result of this active concealment by Defendant, all applicable statutes of limitations otherwise applicable to the allegations herein have been tolled.

### A.    DISCOVERY RULE TOLLING

37.    Class Members had no way of knowing about the Rodent Infestation and the other information concealed by Defendant.

38.    Within the time period of any applicable statutes of limitation, Plaintiffs and the Class Members could not have discovered through the exercise of reasonable diligence that Defendant was concealing the Rodent Infestation.

39.    Plaintiffs and the Class Members did not discover, and did not know of facts that would have caused a reasonable person to suspect, that Defendant did not report information within its knowledge to federal authorities (including the FDA), their stores or consumers, nor would a reasonable and diligent investigation have disclosed that Defendant had information in its possession about the existence and dangerousness of the Rodent Infestation and opted to conceal that information until shortly before this action was filed.

40.    All applicable statutes of limitation have been tolled by operation of the discovery rule.

**B.    FRAUDULENT CONCEALMENT TOLLING**

41.    All applicable statutes of limitation have also been tolled by Defendant's knowing and active fraudulent concealment and denial of the facts alleged herein throughout the time period relevant to this action.

42.    By failing to disclose the Rodent Infestation of which it was aware, Family Dollar disregarded the safety of consumers who purchased the Products.

**C.    ESTOPPEL**

43.    Defendant was under a continuous duty to disclose to Plaintiffs and the Class Members the true character, quality, and nature of the Rodent Infestation and the contamination risks it posed to Products.

44.    Defendant knowingly, affirmatively, and actively concealed the Rodent Infestation and, thereby, the true nature, quality, and character of the Products from consumers, as well as the fact that the Rodent Infestation systematically devalued the Products and undermined consumer safety.

45.    Based on the foregoing, Defendant is estopped from relying on any statutes of limitations in defense of this action.

**VII.    CLASS ACTION ALLEGATION**

46.    Plaintiffs bring this action as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of the following classes:

Mississippi Class
All persons residing in the state of Mississippi who, during the maximum period of time permitted by law, purchased Products from Family Dollar.

Missouri Class
All persons residing in the state of Missouri who, during the maximum period of time permitted by law, purchased Products from Family Dollar.

<u>Tennessee Class</u>
All persons residing in the state of Tennessee who, during the maximum period of time permitted by law, purchased Products from Family Dollar.

<u>Alabama Class</u>
All persons residing in the state of Alabama who, during the maximum period of time permitted by law, purchased Products from Family Dollar.

<u>Arkansas Class</u>
All persons residing in the state of Arkansas who, during the maximum period of time permitted by law, purchased Products from Family Dollar.

<u>Louisiana Class</u>
All persons residing in the state of Louisiana who, during the maximum period of time permitted by law, purchased Products from Family Dollar.

(Collectively referred to herein as the "Classes").

47.     Excluded from the Classes are Defendant, its employees, officers, directors, legal representatives, heirs, successors and wholly or partly owned subsidiaries or affiliates of Defendant, Class Counsel and their employees, and the judicial officers and their immediate family members and associates court staff assigned to this case.

48.     <u>Numerosity—Fed. R. Civ. P. 23(a)(1)</u>.  The Classes are comprised of thousands of individuals who were Defendant's customers, the joinder of which in one action would be impracticable.  The exact number or identification of the Class Members is presently unknown. The identity of the Class Members is ascertainable and can be determined based on Defendant's records.

49.     <u>Predominance of Common Questions—Fed. R. Civ. P. 23(a)(2), 23(b)(3)</u>.  The questions of law and fact common to the Classes predominate over questions affecting only individual Class Members, and include, but are not limited to, the following:

(a)     whether Defendant owed a duty of care;

(b)     whether Defendant knew or should have known that the Rodent Infestation existed;

(c)     whether Defendant knew or should have known that the Rodent Infestation posed health and safety risks to consumers;

(d)     whether Defendant failed to disclose the Rodent Infestation;

(e)     whether Defendant's representations in advertising, warranties, packaging, and/or labeling are false, deceptive, and misleading;

(f)     whether those representations are likely to deceive a reasonable consumer;

(g)     whether Defendant had knowledge that those representations were false, deceptive, and misleading;

(h)     whether Defendant continues to disseminate those representations despite knowledge that the representations are false, deceptive, and misleading;

(i)     whether Defendant's failure to disclose the Rodent Infestation is material to a reasonable consumer;

(j)     whether Defendant's marketing and advertising of the Products are likely to mislead, deceive, confuse, or confound consumers acting reasonably;

(k)     whether Defendant violated State consumer protection laws; and

(l)     whether Plaintiffs and the members of the Classes are entitled to declaratory and injunctive relief.

50.     Defendant engaged in a common course of conduct giving rise to the legal rights sought to be enforced by Plaintiffs individually and on behalf of the other members of the Classes. Identical statutory violations and business practices and harms are involved.  Individual questions, if any, are not prevalent in comparison to the numerous common questions that dominate this

action.

51.     Typicality—Fed. R. Civ. P. 23(a)(3).  Plaintiffs' claims are typical of those of the members of the Classes in that they are based on the same underlying facts, events, and circumstances relating to Defendant's conduct.

52.     Adequacy—Fed. R. Civ. P. 23(a)(4); 23(g)(1).  Plaintiffs will fairly and adequately represent and protect the interests of the Classes, have no interest incompatible with the interests of the Classes, and have retained counsel competent and experienced in class action, consumer protection, and false advertising litigation.

53.     Predominance —Fed. R. Civ. P. 23(b)(3). Questions of law and fact common to the Classes predominate over any questions affecting only individual members of the Classes.

54.     Superiority—Fed. R. Civ. P. 23(b)(3).  A class action is the best available method for the efficient adjudication of this litigation because individual litigation of Class Members' claims would be impracticable and individual litigation would be unduly burdensome to the courts. Plaintiffs and members of the Classes have suffered irreparable harm as a result of Defendant's bad faith, fraudulent, deceitful, unlawful, and unfair conduct.  Because of the size of the individual Class Members' claims, no Class Member could afford to seek legal redress for the wrongs identified in this Complaint.  Without the class action vehicle, the Classes would have no reasonable remedy and would continue to suffer losses, as Defendant continues to engage in the bad faith, unlawful, unfair, and deceptive conduct that is the subject of this Complaint, and Defendant would be permitted to retain the proceeds of its violations of law.  Further, individual litigation has the potential to result in inconsistent or contradictory judgments.  A class action in this case presents fewer management problems and provides the benefits of single adjudication, economies of scale, and comprehensive supervision by a single court.

55.     Plaintiffs and the Classes do not anticipate any difficulty in the management of this litigation.

## VIII.   <u>CAUSES OF ACTION</u>

### COUNT I
### VIOLATION OF MISSISSIPPI CONSUMER PROTECTION ACT
### (MISS. CODE. ANN. § 75-24-1, et seq.)
### (brought on behalf of the Mississippi Class)

56.     Plaintiffs re-allege and incorporate by reference each of the paragraphs above.

57.     This claim is brought on behalf of Mississippi residents.

58.     The Mississippi Consumer Protection Act ("Mississippi CPA") prohibits "unfair or deceptive trade practices in or affecting commerce." MISS. CODE. ANN. § 75-24-5(1). Unfair or deceptive practices include, but are not limited to, "(e) Representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not have or that a person has a sponsorship, approval, status, affiliation, or connection that he does not have;" "(g) Representing that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another;" and "(i) Advertising goods or services with intent not to sell them as advertised."

59.     By concealing the risks and harms associated with the use and handling of the Products (which due to the Rodent Infestation and other unsanitary conditions contain or have a risk of containing Salmonella or other infectious diseases), Defendant engaged in deceptive business practices, including representing that Products have characteristics, uses, benefits, and qualities which they do not have; representing that Products are of a particular standard, quality, and grade when they are not; and engaging in other unconscionable, false, misleading, or deceptive acts or practices in the conduct of trade or commerce. All of this deception would be material to a reasonable consumer.

60.     Defendant also engaged in unlawful trade practices by employing deception, deceptive acts or practices, fraud, misrepresentations, or concealment, suppression or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale of the Products.

61.     By failing to disclose and by actively concealing the defects in the Products, Defendant engaged in unfair and deceptive business practices.

62.     In the course of Defendant's business, it willfully failed to disclose and actively concealed the dangerous risk posed by the Products.

63.     Defendant's unfair or deceptive acts or practices were likely to and did in fact deceive reasonable consumers, including Plaintiffs.

64.     Defendant intentionally and knowingly misrepresented material facts regarding the Products.

65.     Defendant knew or should have known that its conduct was violative.

66.     Defendant owed a duty to disclose the true safety and reliability of the Products.

67.     Because Defendant fraudulently concealed the harms and risks associated with the Products, consumers were deprived of the benefit of their bargain since the Products purchased were worth less than they would have been if they were free from such harms and risks.

68.     Plaintiffs suffered ascertainable loss caused by Defendant's misrepresentations and its concealment.

69.     As a direct and proximate result of Defendant's violations, Plaintiffs have suffered injury-in-fact and/or actual damage as alleged above. As a direct result of Defendant's misconduct, Plaintiffs and the Class incurred damages.

70.    Plaintiffs seek actual damages in an amount to be determined at trial any other just and proper relief available under the Mississippi CPA.

**COUNT II**
**VIOLATION OF ALABAMA DECEPTIVE TRADE PRACTICES ACT**
**(ALA. CODE § 8-19-1, et seq.)**
**(brought on behalf of the Alabama Class)**

71.    Plaintiffs re-allege and incorporate by reference each of the paragraphs above.

72.    This claim is brought on behalf of Alabama residents.

73.    Plaintiffs are "consumer[s]" within the meaning of ALA. CODE § 8-19-3(2).

74.    Plaintiffs are "person[s]" within the meaning of ALA. CODE § 8-19-3(5).

75.    The Products are "goods" within the meaning of ALA. CODE § 8-19-3(3).

76.    Defendant engaged in "trade or commerce" within the meaning of ALA. CODE § 8-19-3(8).

77.    The Alabama Deceptive Trade Practices Act ("Alabama DTPA") declares several specific actions to be unlawful, including: "(5) Representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or qualities that they do not have," "(7) Representing that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another," and "(27) Engaging in any other unconscionable, false, misleading, or deceptive act or practice in the conduct of trade or commerce." ALA. CODE § 8-19-5.

78.    By concealing the risks and harms associated with the use and handling of the Products (which due to the Rodent Infestation and other unsanitary conditions contain or have a risk of containing Salmonella or other infectious diseases), Defendant engaged in deceptive business practices prohibited by the Alabama DTPA, including representing that Products have characteristics, uses, benefits, and qualities which they do not have; representing that Products are

of a particular standard, quality, and grade when they are not; and engaging in other unconscionable, false, misleading, or deceptive acts or practices in the conduct of trade or commerce. All of this deception would be material to a reasonable consumer.

79.    Defendant also engaged in unlawful trade practices by employing deception, deceptive acts or practices, fraud, misrepresentations, or concealment, suppression or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale of the Products.

80.    By failing to disclose and by actively concealing the defects in the Products, Defendant engaged in unfair and deceptive business practices in violation of the Alabama DTPA.

81.    In the course of Defendant's business, it willfully failed to disclose and actively concealed the dangerous risks posed by the Products.  Defendant's unfair or deceptive acts or practices were likely to and did in fact deceive reasonable consumers, including Plaintiffs.

82.    Defendant intentionally and knowingly misrepresented material facts regarding the Products.

83.    Defendant knew or should have known that its conduct violated the Alabama DTPA.

84.    Defendant owed a duty to disclose the true safety and reliability of the Products.

85.    Because Defendant fraudulently concealed the harms and risks associated with the Products, consumers were deprived of the benefit of their bargain since the Products purchased were worth less than they would have been if they were free from such harms and risks.

86.    Plaintiffs suffered ascertainable loss caused by Defendant's misrepresentations and its concealment.

87.     As a direct and proximate result of Defendant's violations of the Alabama DTPA, Plaintiffs have suffered injury-in-fact and/or actual damage as alleged above. As a direct result of Defendant's misconduct, Plaintiffs and the Class incurred damages.

88.     Pursuant to ALA. CODE § 8-19-10, Plaintiffs seeks monetary relief against Defendant.

89.     Plaintiffs also seek an order enjoining Defendant's unfair, unlawful, and/or deceptive practices, attorneys' fees, and any other just and proper relief available under ALA. CODE § 8-19-1, et seq.

## COUNT III
## VIOLATION OF THE DECEPTIVE TRADE PRACTICE ACT
### (ARK. CODE ANN. § 4-88-101, et seq.)
### (brought on behalf of the Arkansas Class)

90.     Plaintiffs re-allege and incorporate by reference each of the paragraphs above.

91.     This claim is brought on behalf of Arkansas residents.

92.     Defendant and Plaintiffs are "persons" within the meaning of the Arkansas Deceptive Trade Practices Act ("Arkansas DTPA"), ARK. CODE ANN. § 4-88-102(5).

93.     The Products are "goods" within the meaning of ARK. CODE ANN. § 4-88-102(4).

94.     The Arkansas DTPA prohibits "[d]eceptive and unconscionable trade practices," which include, but are not limited to, a list of enumerated items, including "[e]ngaging in any other unconscionable, false, or deceptive act or practice in business, commerce, or trade[.]" ARK. CODE ANN. § 4-88-107(a)(10). The Arkansas DTPA also prohibits the following when utilized in connection with the sale or advertisement of any goods: "(1) The act, use, or employment by any person of any deception, fraud, or false pretense; or (2) The concealment, suppression, or omission of any material fact with intent that others rely upon the concealment, suppression, or omission." ARK. CODE ANN. § 4-88-108.

95.    By concealing the risks and harms associated with the use and handling of the Products (which due to the Rodent Infestation and other unsanitary conditions contain or have a risk of containing Salmonella or other infectious diseases), Defendant engaged in deceptive business practices, including representing that Products have characteristics, uses, benefits, and qualities which they do not have; representing that Products are of a particular standard, quality, and grade when they are not; and engaging in other unconscionable, false, misleading, or deceptive acts or practices in the conduct of trade or commerce. All of this deception would be material to a reasonable consumer.

96.    Defendant also engaged in unlawful trade practices by employing deception, deceptive acts or practices, fraud, misrepresentations, or concealment, suppression or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale of the Products.

97.    By failing to disclose and by actively concealing the defects in the Products, Defendant engaged in unfair and deceptive business practices.

98.    In the course of Defendant's business, it willfully failed to disclose and actively concealed the dangerous risk posed by the Products.

99.    Defendant's unfair or deceptive acts or practices were likely to and did in fact deceive reasonable consumers, including Plaintiffs.

100.    Defendant intentionally and knowingly misrepresented material facts regarding the Products.

101.    Defendant knew or should have known that its conduct was violative.

102.    Defendant owed a duty to disclose the true safety and reliability of the Products.

103.    Because Defendant fraudulently concealed the harms and risks associated with the Products, consumers were deprived of the benefit of their bargain since the Products purchased were worth less than they would have been if they were free from such harms and risks.

104.    Plaintiffs suffered ascertainable loss caused by Defendants' misrepresentations and its concealment.

105.    As a direct and proximate result of Defendant's violations, Plaintiffs have suffered injury-in-fact and/or actual damage as alleged above. As a direct result of Defendant's misconduct, Plaintiffs and the Class incurred damages.

106.    As a result of Defendant's actions, Plaintiffs seek monetary relief against Defendant.

**COUNT IV**
**VIOLATION OF THE LOUISIANA UNFAIR TRADE PRACTICES**
**AND CONSUMER PROTECTION LAW**
**(LA. REV. STAT. § 51:1401, et seq.)**
**(brought on behalf of the Louisiana Class)**

107.    Plaintiffs re-allege and incorporate by reference each of the paragraphs above.

108.    This claim is brought on behalf of Louisiana residents.

109.    Defendant and Plaintiffs are "persons" within the meaning of the LA. REV. STAT. § 51:1402(8).

110.    Plaintiffs are "consumer[s]" within the meaning of LA. REV. STAT. § 51:1402(1).

111.    The Louisiana Unfair Trade Practices and Consumer Protection Law ("Louisiana CPL") makes unlawful "deceptive acts or practices in the conduct of any trade or commerce." LA. REV. STAT. § 51:1405(A).

112.    By concealing the risks and harms associated with the use and handling of the Products (which due to the Rodent Infestation and other unsanitary conditions contain or have a

risk of containing Salmonella or other infectious diseases), Defendant engaged in deceptive business practices, including representing that Products have characteristics, uses, benefits, and qualities which they do not have; representing that Products are of a particular standard, quality, and grade when they are not; and engaging in other unconscionable, false, misleading, or deceptive acts or practices in the conduct of trade or commerce. All of this deception would be material to a reasonable consumer.

113.    Defendant also engaged in unlawful trade practices by employing deception, deceptive acts or practices, fraud, misrepresentations, or concealment, suppression or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale of the Products.

114.    By failing to disclose and by actively concealing the defects in the Products, Defendant engaged in unfair and deceptive business practices.

115.    In the course of Defendant's business, it willfully failed to disclose and actively concealed the dangerous risk posed by the Products.

116.    Defendant's unfair or deceptive acts or practices were likely to and did in fact deceive reasonable consumers, including Plaintiffs.

117.    Defendant intentionally and knowingly misrepresented material facts regarding the Products.

118.    Defendant knew or should have known that its conduct violated the Louisiana CPL.

119.    Defendant owed a duty to disclose the true safety and reliability of the Products.

120.    Because Defendant fraudulently concealed the harms and risks associated with the Products, consumers were deprived of the benefit of their bargain since the Products purchased were worth less than they would have been if they were free from such harms and risks.

121.    Plaintiffs suffered ascertainable loss caused by Defendant's misrepresentations and its concealment.

122.    As a direct and proximate result of Defendant'' violations, Plaintiffs have suffered injury-in-fact and/or actual damage as alleged above. As a direct result of Defendant's misconduct, Plaintiffs and the Class incurred damages.

123.    Pursuant to LA. REV. STAT. § 51:1409, Plaintiffs seek to recover actual damages in an amount to be determined at trial; treble damages for Defendant's knowing violations of the Louisiana CPL; an order enjoining Defendant's unfair, unlawful, and/or deceptive practices; declaratory relief; attorneys' fees; and any other just and proper relief available under LA. REV. STAT. § 51:1409.

## COUNT V
## VIOLATION OF MISSOURI MERCHANDISING PRACTICES ACT
### (MO. REV. STAT. § 407.010, et seq.)
### (brought on behalf of the Missouri Class)

124.    Plaintiffs re-allege and incorporate by reference each of the paragraphs above.

125.    This claim is brought on behalf of Missouri residents.

126.    Defendant and Plaintiffs are "persons" within the meaning of MO. REV. STAT. § 407.010(5).

127.    Defendant engaged in "trade" or "commerce" in the State of Missouri within the meaning of MO. REV. STAT. § 407.010(7).

128.    The Missouri Merchandising Practices Act ("Missouri MPA") makes unlawful the "act, use or employment by any person of any deception, fraud, false pretense, misrepresentation, unfair practice, or the concealment, suppression, or omission of any material fact in connection with the sale or advertisement of any merchandise." MO. REV. STAT. § 407.020.

129.    By concealing the risks and harms associated with the use and handling of the Products (which due to the Rodent Infestation and other unsanitary conditions contain or have a risk of containing Salmonella or other infectious diseases), Defendant engaged in deceptive business practices, including representing that Products have characteristics, uses, benefits, and qualities which they do not have; representing that Products are of a particular standard, quality, and grade when they are not; and engaging in other unconscionable, false, misleading, or deceptive acts or practices in the conduct of trade or commerce. All of this deception would be material to a reasonable consumer.

130.    Defendant also engaged in unlawful trade practices by employing deception, deceptive acts or practices, fraud, misrepresentations, or concealment, suppression or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale of the Products.

131.    By failing to disclose and by actively concealing the defects in the Products, Defendant engaged in unfair and deceptive business practices.

132.    In the course of Defendant's business, it willfully failed to disclose and actively concealed the dangerous risk posed by the Products.

133.    Defendant's unfair or deceptive acts or practices were likely to and did in fact deceive reasonable consumers, including Plaintiffs.

134.    Defendant intentionally and knowingly misrepresented material facts regarding the Products.

135.    Defendant knew or should have known that its conduct was violative.

136.    Defendant owed a duty to disclose the true safety and reliability of the Products.

137.    Because Defendant fraudulently concealed the harms and risks associated with the Products, consumers were deprived of the benefit of its bargain since the Products purchased were worth less than they would have been if they were free from such harms and risks.

138.    Plaintiffs suffered ascertainable loss caused by Defendant's misrepresentations and its concealment.

139.    As a direct and proximate result of Defendant's violations, Plaintiffs have suffered injury-in-fact and/or actual damage as alleged above. As a direct result of Defendant's misconduct, Plaintiffs and the Class incurred damages.

140.    Defendant is liable to Plaintiffs for damages in amounts to be proven at trial, including attorneys' fees, costs, and punitive damages, as well as injunctive relief enjoining Defendant's unfair and deceptive practices, and any other just and proper relief under MO. REV. STAT. § 407.025.

**COUNT VI**
**VIOLATION OF TENNESSEE CONSUMER PROTECTION ACT**
**(TENN. CODE ANN. § 47-18-101, et seq.)**
**(brought on behalf of the Tennessee Class)**

141.    Plaintiffs re-allege and incorporate by reference each of the paragraphs above.

142.    This claim is brought on behalf of Tennessee residents.

143.    Plaintiffs are "natural persons" and "consumers" within the meaning of TENN. CODE ANN. § 47-18-103(2).

144.    Defendant is a "person" within the meaning of TENN. CODE ANN. § 47-18-103(2).

145.    Defendant's conduct complained of herein affected "trade," "commerce" or "consumer transactions" within the meaning of TENN. CODE ANN. § 47-18-103(19).

146.    The Tennessee Consumer Protection Act ("Tennessee CPA") prohibits "[u]nfair or deceptive acts or practices affecting the conduct of any trade or commerce," including but not limited to: "Representing that goods or services have … characteristics, [or] … benefits … that they do not have…;" "Representing that goods or services are of a particular standard, quality or grade… if they are of another;" and "Advertising goods or services with intent not to sell them as advertised." TENN. CODE ANN. § 47-18-104.

147.    By concealing the risks and harms associated with the use and handling of the Products (which due to the Rodent Infestation and other unsanitary conditions contain or have a risk of containing Salmonella or other infectious diseases), Defendant engaged in deceptive business practices, including representing that Products have characteristics, uses, benefits, and qualities which they do not have; representing that Products are of a particular standard, quality, and grade when they are not; and engaging in other unconscionable, false, misleading, or deceptive acts or practices in the conduct of trade or commerce. All of this deception would be material to a reasonable consumer.

148.    Defendant also engaged in unlawful trade practices by employing deception, deceptive acts or practices, fraud, misrepresentations, or concealment, suppression or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale of the Products.

149.    By failing to disclose and by actively concealing the defects in the Products, Defendant engaged in unfair and deceptive business practices.

150.    In the course of Defendant's business, it willfully failed to disclose and actively concealed the dangerous risk posed by the Products.

151.    Defendant's unfair or deceptive acts or practices were likely to and did in fact deceive reasonable consumers, including Plaintiffs.

152.    Defendant intentionally and knowingly misrepresented material facts regarding the Products.

153.    Defendant knew or should have known that its conduct was violative.

154.    Defendant owed a duty to disclose the true safety and reliability of the Products.

155.    Because Defendant fraudulently concealed the harms and risks associated with the Products, consumers were deprived of the benefit of their bargain since the Products purchased were worth less than they would have been if they were free from such harms and risks.

156.    Plaintiffs suffered ascertainable loss caused by Defendant's misrepresentations and its concealment.

157.    As a direct and proximate result of Defendant's violations, Plaintiffs have suffered injury-in-fact and/or actual damage as alleged above. As a direct result of Defendant's misconduct, Plaintiffs and the Class incurred damages.

158.    Pursuant to TENN. CODE § 47-18-109(a), Plaintiffs seek monetary relief against Defendant measured as actual damages in an amount to be determined at trial, treble damages as a result of Defendant's willful or knowing violations, and any other just and proper relief available under the Tennessee CPA.

## COUNT VII
## NEGLIGENCE
### (brought on behalf of the Classes)

159.    Plaintiffs re-allege and incorporate by reference each of the paragraphs above.

160.    Defendant owed a duty to Plaintiffs and the Classes to exercise reasonable care in the sale, quality control and marketing of the Products.

161.    Defendant breached its duty to Plaintiffs and the Classes by marketing, selling, advertising and warranting defective Products (which contain or have a risk of containing Salmonella or other infectious diseases) to Plaintiffs and the Classes, and by failing to take those steps necessary to discontinue selling the Products to consumers.

162.    Defendant was aware, or reasonably should have been aware, that the Products were harmful and did not perform their intended use.

163.    When they purchased the Products, Plaintiffs and the Classes were unaware of their unsafe and dangerous nature.

164.    As a direct and proximate cause of the foregoing, Plaintiffs and the Classes have suffered and will continue to suffer damages and economic loss described fully above.

165.    Plaintiffs and the Classes are entitled to damages in an amount to be determined at trial.

## COUNT VIII
## BREACH OF IMPLIED WARRANTY
### (brought on behalf of the Classes)

166.    Plaintiffs re-allege and incorporate by reference each of the paragraphs above.

167.    Defendant is a merchant engaging in the sale of goods to Plaintiffs and the Class members.

168.    There was a sale of goods from Defendant to Plaintiffs and the Class members.

169.    As set forth herein, Defendant marketed and sold the Products, and prior to the time the Products were purchased by Plaintiffs and the Classes, Defendant impliedly warranted to them that they were of merchantable quality, fit for their ordinary use, and conformed to the promises and affirmations of fact made on the Products' packages and labels that they did not.

170.    Plaintiffs and the Classes relied on Defendant's promises and affirmations of fact.

171.    Contrary to these representations and warranties, the Products were not fit for their ordinary use and did not conform to Defendant's representations.

172.    Defendant breached the implied warranties by selling Products that risk serious harm and Defendant were or should have been on notice of this breach.

173.    As a direct and proximate result of Defendant's conduct, Plaintiffs and the Classes have suffered actual damages in that they have purchased the Products that are worth less than the price they paid and that they would not have purchased at all had they known the harms and risks that the Products contained.

## COUNT IX
## UNJUST ENRICHMENT
### (brought on behalf of the Classes)

174.    Plaintiffs re-allege and incorporate by reference each of the paragraphs above.

175.    Substantial benefits have been conferred on Defendant by Plaintiffs and the Classes through the purchase of the Products. Defendant knowingly and willingly accepted and enjoyed these benefits.

176.    Defendant either knew or should have known that the payments rendered by Plaintiffs and the Classes were given and received with the expectation that the Products would have the qualities, characteristics, ingredients, and suitability for use represented and warranted by Defendant. As such, it would be inequitable for Defendant to retain the benefit of the payments under these circumstances.

177.    Defendant's acceptance and retention of these benefits under the circumstances alleged herein make it inequitable for Defendant to retain the benefits without payment of the value to Plaintiffs and the Classes.

178.    Plaintiffs and the Classes are entitled to recover from Defendant all amounts wrongfully collected and improperly retained by Defendant, plus interest thereon.

## COUNT X
## FRAUDULENT CONCEALMENT AND FAILURE TO DISCLOSE
### (brought on behalf of the Classes)

179.    Plaintiffs re-allege and incorporate by reference each of the paragraphs above.

180.    During the Class period, Defendant knowingly, fraudulently, and actively misrepresented, omitted and concealed from consumers material facts relating to the quality of its Products.

181.    Defendant has a duty to disclose to Plaintiffs and the Classes the actual quality of its Products which contain or have a risk of containing Salmonella or other infectious diseases.

182.    The misrepresentations, omissions and concealments complained of herein were material and were made on a uniform and market-wide basis.  As a direct and proximate result of these misrepresentations, omissions and concealments, Plaintiffs and the Classes have been damaged, as alleged herein.

183.    Plaintiffs and the Classes reasonably and actually relied upon Defendant's representations, omissions and concealments.  Such reliance may also be imputed, based upon the materiality of Defendant's wrongful conduct.

184.    Based on such reliance, Plaintiffs and the Classes purchased Products and, as a result, suffered and will continue to suffer damages and economic loss in an amount to be proven at trial.

185.    Had Plaintiffs and the Classes been aware of the true nature of Defendant's business practices, they would not have purchased the Products.

186.    Defendant's acts and misconduct, as alleged herein, constitute oppression, fraud and/or malice entitling Plaintiffs and the Classes to an award of punitive damages to the extent allowed in an amount appropriate to punish or to set an example of Defendant.

## COUNT XI
## DECLARATORY AND INJUNCTIVE RELIEF
### (brought on behalf of the Classes)

187.    Plaintiffs re-allege and incorporate by reference each of the paragraphs above.

188.    Plaintiffs and the Classes are entitled to declaratory relief establishing that Defendant engaged in unfair and deceptive practices.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray that this case be certified and maintained as a class action and for a judgment to be entered upon Defendant as follows:

A.    Appointing Plaintiffs as representatives of the Classes and the undersigned counsel as Class counsel;

B.    For economic and compensatory damages on behalf of Plaintiffs and all Class Members;

C.    For actual damages sustained;

D.    For treble damages pursuant to law, and all other actual, general, special, incidental, statutory, punitive, and consequential damages to which Plaintiffs and Class Members are entitled;

E.    For injunctive relief, compelling Defendant to cease its unlawful actions and to account to Plaintiffs for their unjust enrichment;

F.    For reasonable attorneys' fees, reimbursement of all costs for the prosecution of this action, and pre-judgment and post-judgment interest; and

G.    For such other and further relief this Court deems just and appropriate.

## VIII.    <u>**DEMAND FOR JURY TRIAL**</u>

Plaintiffs demand a trial by jury on all causes of action so triable.

Dated: February 23, 2022                    Respectfully submitted,

/s/ *Don Barrett*
John W. ("Don") Barrett (MSB#2063)
Katherine B. Riley (MSB# 99109)
Sterling Aldridge (MSB# 104277)
BARRETT LAW GROUP, P.A.
404 Court Square
Lexington, Mississippi 39095
Telephone: (662) 834-2488
Email: dbarrett@barrettlawgroup.com
           kbriley@barrettlawgroup.com
           saldridge@barrettlawgroup.com

Charles J. LaDuca
Alexandra C. Warren
Brendan S. Thompson
CUNEO GILBERT & LaDUCA, LLP
4725 Wisconsin Ave., NW, Suite 200
Washington, DC 20016
Telephone: (202) 789-3960
Email: charles@cuneolaw.com
           awarren@cuneolaw.com
           brendant@cuneolaw.com

Jerry Abdalla (MSB# 101213)
Abdalla Law, PLLC
602 Steed Rd #200
Ridgeland, MS 39157
Telephone: (601) 487-4590
Email: gmabdall@hotmail.com